# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Farm Bureau Property & Casualty Insurance Company, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Jonathan A. Mceldowney, et al.,<br><br>Defendants. | No. CV-14-01790-TUC-RM<br><br>**ORDER** |

Pending before the Court are Plaintiffs Farm Bureau Property & Casualty Insurance Company's and Western Agricultural Insurance Company's (collectively, "Farm Bureau" or "Plaintiffs") Motion for Summary Judgment (Doc. 86); Defendants Jonathan McEldowney's, McEldowney Independent Insurance Agency's, and Andy McEldowney Insurance Agency's (collectively, "McEldowney" or "Defendants") Motion for Summary Judgment (Doc. 83); and Defendants' Motion for Sanctions (Doc. 85). For the reasons that follow, all three motions will be granted in part and denied in part.

## *I. Factual and Procedural History*

The following facts are undisputed except where otherwise noted. Farm Bureau sells insurance products in Arizona and other states through agents. (PSOF ¶ 1.) It has approximately 23,500 total accounts in Arizona. (PSOF ¶ 5.)

Jonathan McEldowney was a Farm Bureau agent from January 2011 to September 2013. (PSOF ¶ 2.) On January 2, 2011 and December 13, 2012, McEldowney signed agent contracts that contained non-solicitation and confidentiality provisions. (PSOF ¶¶

6-8; DSOF ¶ 1, 3.) The non-solicitation provision of the contracts states, in relevant part:

> It is hereby understood and agreed that upon the termination of this Agent Contract for any reason, Agent will neither sell nor solicit, directly or indirectly, or initiate replacements or exchanges of any insurance product, with respect to any policyholder of the Companies, their subsidiaries or affiliates, or with any company with which Companies have a marketing agreement, within any counties in which Agent sold or serviced any products pursuant to this Contract. If Agent violates this provision, commissions already paid on unearned premium on all policies will be due and payable to the Companies immediately and Agent forfeits all rights to any additional payments due Agent from the Companies. This provision will be enforceable for a period of eighteen (18) months following the termination of this Contract. . . . Agent also agrees to reimburse Companies for any expenses Companies incur, including reasonable attorney fees, in the event of breach of this provision by Agent.

(PSOF ¶ 7; DSOF ¶ 3; *see also* Doc. 86-2 at 29.) The 18-month period covered by the non-solicitation provision was intended to account for the time it takes for Farm Bureau to fully train a new agent to replace a departing one, as well as the time necessary for the new agent to begin building on the goodwill fostered by the departing agent. (PSOF ¶ 44.) The confidentiality provision of the contracts states, in relevant part:

> In performing his or her duties as an Agent, Agent will have access to and receive certain confidential or proprietary Information from or on behalf of Companies (hereafter, "Confidential Information"). Agent shall take all reasonable steps necessary to protect the confidential and proprietary nature of all Confidential Information. . . . Except as provided in this Contract, by law, or with the permission of the subject of the information, Agent shall not directly or indirectly disclose or make available to any third party any Confidential Information. Agent agrees not to appropriate any Confidential Information for his or her own use either during the course of or subsequent to termination of this Contract. Confidential information shall include, but not be limited to customer and consumer information. Confidential Information shall not include information which Agent has confirmed is publicly known, so long as it is not publicly known through the acts or omissions of Agent. . . .

(PSOF ¶ 8; DSOF ¶ 14; *see also* Doc. 86-2 at 31.)

McEldowney resigned as a Farm Bureau agent on September 10, 2013. (PSOF ¶ 9; DSOF ¶ 2.) At the time of his resignation, he had 337 accounts or clients. (PSOF ¶ 4.) Prior to resigning, he made plans to open an independent insurance agency. (PSOF ¶ 10.) Seeking assistance, he met with Steve Woodworth of the Couri Insurance Agency. (PSOF ¶¶ 11-12.) McEldowney provided the Couri Insurance Agency with information about himself, as well as an internal Farm Bureau loss history report. (PSOF ¶ 13.)

Ultimately, McEldowney formed the McEldowney Independent Insurance Agency, Inc. and the Andy McEldowney Insurance Agency, LLC. (PSOF ¶ 16-20.) The Couri Insurance Agency assisted McEldowney in setting up the McEldowney Independent Insurance Agency and became a 50% shareholder. (PSOF ¶ 21.)

Before leaving Farm Bureau, McEldowney sent his clients a note stating:

Dear Valued Customer,

After almost three years I have decided to leave Farm Bureau Financial Services to pursue an opportunity that I believe will be a better fit for me to serve customers as well as pursue my goals. I am sure your account will be assigned to another agent soon but until then you will be able to obtain service at any local office or www.FBFS.com. If you need to file a claim, simply call 1-800-226-6383. I want you to know that it has truly been a pleasure to assist you with your insurance needs. I have enjoyed having you as a customer, and I appreciate your business. Thank you very much!

(PSOF ¶ 14; Doc. 86-3 at 52.) The note included McEldowney's new contact information. (PSOF ¶ 14.)

After leaving Farm Bureau, McEldowney retained information about certain Farm Bureau customers—such as phone numbers, email addresses and birthdays—which were stored in his cellular phone. (Doc. 86-3, Ex. 2, McEldowney Dep. at 32:11-36:4.) The parties dispute whether McEldowney actively solicited Farm Bureau customers after his departure from Farm Bureau. It is undisputed that, following McEldowney's resignation, Farm Bureau began receiving cancellation notices from policyholders who had been clients of McEldowney when he worked for Farm Bureau. (PSOF ¶ 24.) Of the approximately 330 clients that McEldowney had when he left Farm Bureau, approximately 60 to 70 are now clients of McEldowney's new independent insurance agency. (PSOF ¶ 35; Doc. 86-4 at 52-53.)

On February 14, 2014, Plaintiffs sued Defendants for breach of contract, breach of fiduciary duty, misappropriation of trade secrets, and declaratory and injunctive relief. (Doc. 1.)

## II. Motions for Summary Judgment

In their Motion for Summary Judgment, Plaintiffs argue that undisputed evidence shows McEldowney breached the non-solicitation and confidentiality provisions of his

1  agent contract, that he misappropriated trade secrets in violation of the Arizona Uniform Trade Secret Act ("AUTSA"), and that he breached his fiduciary duty to Farm Bureau. (DSOF ¶ 4.) McEldowney denies soliciting Farm Bureau clients but admits to giving quotes for insurance to Farm Bureau clients and to selling or replacing their insurance products. (PSOF ¶¶ 36, 38.) McEldowney admits to keeping and using client contact information and birthdays, but argues that such information is not confidential. (PSOF ¶ 41; Defendants' Response to PSOF ¶ 41.) In their Motion for Summary Judgment, Defendants argue that the non-solicitation provision of McEldowney's agent contract is unreasonably broad and unenforceable, and that there is no evidence that McEldowney violated the confidentiality provision of his contract, misappropriated trade secrets, or breached a fiduciary duty. Defendants also argue that Plaintiffs' breach of fiduciary duty claim is preempted by the AUTSA.

### A. Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if the evidence is such that a reasonable trier of fact could resolve the dispute in favor of the nonmoving party. *See id.* In evaluating a motion for summary judgment, the court must "draw all reasonable inferences from the evidence" in favor of the non-movant. *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002). A reasonable inference is one which is supported by "significant probative evidence" rather than "threadbare conclusory statements." *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680-81 (9th Cir. 1985) (internal quotation omitted). If the "evidence yields conflicting inferences, summary judgment is improper, and the action must proceed to trial." *O'Connor*, 311 F.3d at 1150.

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there is no genuine issue as to any material fact, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23.

### B. Breach of Non-Solicitation Provision

The parties dispute whether McEldowney solicited Farm Bureau clients after resigning from Farm Bureau and starting his independent insurance agency. If the non-solicitation provision of McEldowney's agent contract is enforceable, McEldowney's liability does not hinge on whether he solicited clients, because the non-solicitation provision does not merely prohibit soliciting Farm Bureau customers: it also prohibits selling or initiating replacements or exchanges of any insurance products with respect to Farm Bureau policyholders. It is undisputed that, after resigning from Farm Bureau, McEldowney sold and replaced insurance products with respect to Farm Bureau policyholders. The dispositive issue, then, is whether the non-solicitation provision is enforceable.

Defendants argue in their Motion for Summary Judgment that the non-solicitation provision at issue is unreasonably overbroad and unenforceable under Arizona law because it prohibits McEldowney from selling insurance to or soliciting insurance business from any Farm Bureau policyholder in any of the counties in which McEldowney sold insurance for Farm Bureau, as well as any policyholder, in those counties, of Farm Bureau's affiliates, and any policyholder, in those counties, of the companies with which Farm Bureau has marketing agreements. Plaintiffs aver that they only seek to enforce the portion of the non-solicitation provision which prohibits selling or soliciting Farm Bureau policyholders in the counties in which McEldowney worked, and that this portion of the provision is reasonable and enforceable under Arizona law.[1]

---

[1] Because Plaintiffs do not seek to enforce the other portions of the non-solicitation provision, the Court will assume, for purposes of the parties' motions, that the other portions are unreasonable and unenforceable.

- 5 -

Defendants counter that, even if the non-solicitation provision were blue-penciled such that it prohibits only selling to or soliciting Farm Bureau clients in the counties in which McEldowney worked, it is nevertheless unreasonably overbroad and unenforceable under Arizona law because it prohibits solicitation of individuals with whom McEldowney had no relationship when he was a Farm Bureau agent.

Non-solicitation agreements serve the legitimate purpose of "prevent[ing] competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment." *Valley Med. Specialists v. Farber*, 982 P.2d 1277, 1281 (Ariz. 1999) (internal quotation omitted). Non-solicitation agreements are enforceable under Arizona law if they are reasonable. *Amex Distrib. Co. v. Mascari*, 724 P.2d 596, 601 (Ariz. App. 1986).

If it is clear that the contract was intended to be severable, then a court may eliminate grammatically severable, unreasonable provisions from a restrictive covenant in order to enforce the remaining, reasonable provisions. *Valley Med. Specialists*, 982 P.2d at 1286; *see also Amex. Distrib. Co.*, 724 P.2d at 601; *Olliver/Pilcher Ins., Inc. v. Daniels*, 715 P.2d 1218, 1221 (Ariz. 1986). However, a court is not permitted to rewrite a contract "and create a restrictive covenant significantly different from that created by the parties." *Valley Med. Specialists*, 982 P.2d at 1286. Here, the controlling contract contains a severance clause (*see* Doc. 86-2 at 31), and thus the Court may eliminate grammatically severable, unreasonable provisions, so long as it does not rewrite the agreement.[2]

"[R]easonableness is a fact-intensive inquiry that depends on weighing the totality of the circumstances." *Valley Med. Specialists*, 982 P.2d at 1281. A restriction is unreasonable and thus unenforceable if: (1) "the restraint is greater than necessary to protect the employer's legitimate interest," or (2) the employer's legitimate "interest is outweighed by the hardship to the employee and the likely injury to the public." *Id.* at

---

[2] Though, as McEldowney points out, the 2011 version of the agent contract signed by McEldowney did not contain a severance clause, the 2012 version—which replaced the 2011 version—does contain a severance clause. (Doc. 86-2 at 31.)

1283. It is the employer's burden to prove the extent of its legitimate interests. *Unisource Worldwide, Inc. v. Swope*, 964 F. Supp. 2d 1050, 1065 (D. Ariz. 2013); *Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 979 (D. Ariz. 2006) ("The burden is on the employer to prove the extent of its protectable interests, and if it cannot, the entire covenant will be deemed unenforceable."). An employer has a protectable interest in maintaining customer relationships when an employee leaves. *Bryceland v. Northey*, 772 P.2d 36, 40 (Ariz. App. 1989); *see also Valley Med. Specialists*, 982 P.2d at 1284 ("In the commercial context, it is clear that employers have a legitimate interest in retaining their customer base."); *Amex Distrib. Co.*, 724 P.2d at 604 ("close customer contact with the attendant ability to divert customer trade has traditionally been one of the strong justifications for a noncompetition covenant from one through whom the goodwill of the enterprise is developed and exercised"). However, "the employer's interest in its customer base is balanced with the employee's right to the customers." *Valley Med. Specialists*, 983 P.2d at 1284.

McEldowney argues that, under well-established Arizona law, non-solicitation provisions may only prohibit solicitation of individuals with whom a former agent or employee formed a meaningful relationship. In *Amex Distributing*, the Arizona Court of Appeals cited a line of cases from other jurisdictions holding that an employer's protectable interest in customer relationships is limited "to those customers to whom the employee represented the employer's goodwill." *Amex Distrib. Co.*, 724 P.2d at 604. The court noted that these cases raise "a substantial question as to whether [the defendant] could be prohibited from servicing [the plaintiff's] customers other than those with which he did business, or concerning which he acquired significant customer information." *Id.* at 603-04. However, the court expressly declined to resolve this question. *Id.* at 604 ("We pass that issue, however"). Defendants have failed to identify any case law from Arizona state courts directly supporting the proposition that, under Arizona law, non-solicitation provisions may only prohibit solicitation of individuals with whom a former agent or employee formed a meaningful relationship.

In *Nouveau Riche*, the United States Court for the District of Arizona, interpreting Arizona law, stated that, "[w]ith respect to customers, employees, and independent contractors, a non-solicitation restriction may only protect against solicitation of those individuals with whom the Defendants have formed a meaningful relationship." *Nouveau Riche Corp. v. Tree*, CV-08-1627-PHX-JAT, 2008 WL 5381513, at *5 (D. Ariz. Dec. 23, 2008); *see also Karp v. Avella of Deer Valley, Inc.*, CV-13-1885-PHX-DGC, 2013 WL 5435212, at *1 (D. Ariz. Sept. 30, 2013) (characterizing Arizona law in similar fashion). In support of this statement, the court cited to two Arizona cases, *Olliver/Pilcher* and *Amex Distributing*. However, neither case fully supports *Nouveau Riche*'s characterization of Arizona law. As described above, the court in *Amex Distributing* declined to resolve this issue. The court in *Olliver/Pilcher* did not expressly consider the issue.

The non-solicitation provision at issue in *Olliver/Pilcher* precluded the defendant from "solicit[ing] the business of any of [the plaintiff's] Arizona customers" for a period of three years after leaving the plaintiff's employment. *Olliver/Pilcher*, 715 P.2d at 1219. The Arizona Supreme Court noted that the agreement was less restrictive than a non-competition agreement, as it did not restrict "former employees from engaging in their usual trade or profession" but instead was designed merely "to prevent former employees from using information learned during their employment to divert or to 'steal' customers from the former employer." *Id.* The court indicated that, if the agreement "were statewide in scope but applicable only to [the plaintiff's] customers solicited or acted upon by" the defendant, it would be unobjectionable. *Id.* at 1220. The court found the agreement unreasonable, however, because the agreement contained an enforcement mechanism requiring the defendant to pay his former employer 67% of all commissions, fees or compensation earned by the defendant's new employer as a result of any customers moving their business from the former employer to the new employer, regardless of whether the defendant had solicited the customers or otherwise been responsible for his new employer obtaining their business. *Id.* The *Olliver/Pilcher*

defendant's new employer was a general insurance agency that sold insurance statewide. *Id.* at 1219. If the non-solicitation agreement were enforceable, the defendant would be subject to a significant monetary penalty any time a customer switched from the defendant's former employer to his new employer, even if the defendant bore no responsibility for the new employer having obtained that customer's business. *Id.* at 1220.

*Olliver/Pilcher* does not support *Nouveau Riche*'s interpretation of Arizona law, because the Arizona Supreme Court in *Olliver/Pilcher* addressed an issue separate from the issue of whether a non-solicitation provision can prohibit solicitation of individuals with whom the defendant had no relationship while employed by the plaintiff. Furthermore, *Olliver/Pilcher* is factually distinguishable from the present case. Unlike the enforcement mechanism at issue in *Olliver/Pilcher*, the enforcement mechanism of the non-solicitation provision here applies only to accounts that McEldowney himself sold or solicited, rather than to any accounts transferred to any employer of McEldowney. Unlike in *Olliver/Pilcher*, McEldowney himself would have to sell or solicit a Farm Bureau policyholder before the enforcement mechanism of the non-solicitation provision here would be triggered.

Arizona courts have indicated that non-solicitation provisions may be enforceable even if they preclude soliciting any customer of the plaintiff rather than only those customers with whom the defendant formed a relationship. *See, e.g.*, *Alpha Tax Servs., Inc. v. Stuart*, 761 P.2d 1073, 1074 (Ariz. App. 1988) (finding non-solicitation agreement prohibiting defendant from soliciting any of plaintiff company's clients to be reasonable and enforceable, and expressing no concern that agreement prohibited solicitation of clients with whom the defendant had no relationship). There is insufficient support in Arizona case law for application of a bright-line rule that "a non-solicitation restriction may only protect against solicitation of those individuals with whom the Defendants have formed a meaningful relationship." *Nouveau Riche*, 2008 WL 5381513 at *5.

Though it is not a dispositive factor, the fact that the non-solicitation provision at

- 9 -

issue here prohibits selling to or soliciting Farm Bureau customers with whom McEldowney had no relationship undercuts the reasonableness of the agreement. Further, the non-solicitation provision at issue here is broader than that addressed in many cases, because it goes beyond a prohibition on *solicitatio*n of Farm Bureau customers: it also prohibits selling or replacing insurance products with respect to any Farm Bureau customer in the counties in which McEldowney worked. And, though the provision is ostensibly limited to Farm Bureau clients in counties in which McEldowney worked, Farm Bureau has refused to disclose how many Farm Bureau clients exist in the counties in which McEldowney worked. Thus, the evidence before the Court does not indicate the exact number of individuals to whom the non-solicitation provision applies, nor what percentage of the population those individuals represent in the relevant counties. Differing inferences could reasonably be drawn regarding whether the non-solicitation provision is greater than necessary to protect Farm Bureau's legitimate interests and whether those interests are outweighed by hardship to McEldowney. Accordingly, summary judgment in favor of either party is inappropriate on the issue of the reasonableness and enforceability of the non-solicitation provision.

**C. Breach of Confidentiality Provision**

The confidentiality provision of McEldowney's agent contract prohibits appropriating confidential information, which it defines as including customer information. The term "Confidential Information" as used in the agreement is limited to information given to the agent from or on behalf of Farm Bureau during the course of the agent's duties, and does not include publicly available information. (Doc. 86-2 at 31.)

McEldowney does not dispute that he disclosed an internal Farm Bureau loss-ratio report to the Couri Insurance Agency. He also does not dispute that the loss-ratio report was confidential. Though he argues that he sent the loss-ratio report to Couri only for purposes of demonstrating his proficiency as an agent, he identifies no legal authority supporting the position that such a motive insulates him from liability for breach of the confidentiality provision of his contract. Accordingly, summary judgment is appropriate

on the issue of whether McEldowney violated the confidentiality provision by providing a confidential loss-ratio report to the Couri Insurance Agency.

Summary judgment is inappropriate on the issue of whether McEldowney violated the confidentiality provision by misappropriating confidential customer information. McEldowney alleges that much of the customer information that he used after his resignation from Farm Bureau, such as contact information and birthdays, was information pertaining to individuals, such as family and friends, with whom he had personal relationships. If McEldowney acquired contact information and birthdays for such customers outside of his work as a Farm Bureau agent, as opposed to receiving it from or on behalf of Farm Bureau during the course of his duties as a Farm Bureau agent, or if the information is publicly available, then the information falls outside of the confidentiality provision's definition of "Confidential Information," and McEldowney's retention and use of the information after his resignation did not violate the provision. However, if McEldowney retained and used non-publicly available customer information that he received from or on behalf of Farm Bureau during the course of his duties as a Farm Bureau agent, then he violated the confidentiality provision of his agent contract by retaining and using that information after his resignation. Because there are factual disputes regarding how McEldowney obtained the customer information and whether it was publicly available, summary judgment is inappropriate on the issue of whether McEldowney violated the confidentiality provision of his agent contract by using such information.

**D. Misappropriation of Trade Secrets**

Plaintiffs argue that McEldowney's disclosure of a loss-ratio report to the Couri Insurance Agency and his use of customer information constitute not only violations of the confidentiality provision of his agent contract but also misappropriation of trade secrets in violation of the Arizona Uniform Trade Secrets Act ("AUTSA").

Under the AUTSA, if one acquires a trade secret under circumstances giving rise to a duty to maintain its secrecy or limit its use and thereafter discloses or uses the trade

secret without express or implied consent, the person is guilty of misappropriation. *See* A.R.S. § 44-401(2). A "trade secret" is "information, including a formula, pattern, compilation, program, device, method, technique or process," that (1) derives independent economic value—either actual or potential—from not being generally known to or readily ascertainable by others, and (2) is the subject of reasonable efforts to maintain its secrecy. A.R.S. § 44-401(4). A trade secret may include an effective and valuable integration of components that are in the public domain, if compiled "such that the owner derives a competitive advantage" from the grouping. *Enter. Leasing Co. of Phoenix v. Ehmke*, 3 P.3d 1064, 1069 (Ariz. App. 1999).

Farm Bureau's use of confidentiality provisions in agent contracts supports a finding that Farm Bureau took steps to maintain the secrecy of its alleged trade secrets. *See Universal Engraving, Inc. v. Metal Magic, Inc.*, CV-08-1944-PHX-GMS, 2010 WL 4922703, at *7 (D. Ariz. Nov. 29, 2010) (confidentiality provision is evidence that plaintiff took steps to maintain secrecy of its alleged trade secrets). However, Plaintiffs have presented insufficient evidence to support a summary judgment finding that the information they allege constitutes trade secrets derives independent economic value from not being known to or readily ascertainable by others. *See* A.R.S. § 44-401(4)(a).

Customer information and company financial information may qualify as trade secrets. *See HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 945 (D. Ariz. 2013); *Joshua David Mellberg LLC v. Will*, CV-14-02025-TUC-CKJ, 2015 WL 1442920, at *7 (D. Ariz. Mar. 30, 2015); *Inter-Tel (Delaware), Inc. v. Fulton Commc'ns Tel. Co.*, CV-07-866-PHX-RCB, 2007 WL 1725349, at *6 (D. Ariz. June 12, 2007). Though a customer list *may* qualify as a trade secret, however, it does not *necessarily* so qualify. In *Calisi v. Unified Financial Services., LLC*, the Court held that the plaintiff had failed to prove that its customer information constituted a trade secret because it had not shown that it had invested substantial time and effort to acquire specialized, valuable information about its customers, and their particular needs and preferences, which was unknown to competitors and difficult for competitors to duplicate or acquire. 302 P.3d 628, 633-34 (Ariz. App.

2013).

Undisputed evidence shows that McEldowney retained and used customer contact information and birthdays, but—like the plaintiff in *Calisi*—Farm Bureau has failed to identify evidence indicating that this information is unknown to competitors and would be difficult for competitors to duplicate or acquire. Indeed, McEldowney may have acquired some of this information outside the scope of his duties as a Farm Bureau agent, as some of the information relates to individuals with whom he had friendships or familial relationships. Farm Bureau has likewise failed to identify evidence showing that customer contact information and birthdays constitutes specialized, valuable information about its customers that it acquired through a substantial investment of time and effort. Accordingly, summary judgment will be granted in Defendants' favor on the issue of whether McEldowney violated the AUTSA by using customer contact information and birthdays.

Farm Bureau may be able to prove a violation of the AUTSA if it convinces a jury that McEldowney misappropriated specialized, internal information about customers' insurance purchases and claims histories. However, there is a material dispute of fact regarding whether McEldowney misappropriated any such information. In his deposition, he denied retaining any such information after his resignation from Farm Bureau, but a reasonable inference to the contrary could be drawn from documented communications that he had with Farm Bureau customers after he started his independent insurance agency. (*See* Doc. 86-3, Ex. 2, McEldowney Dep. at 32:11-36:4, 88:9-14.).

Financial information such as that contained in the loss-ratio report disclosed by McEldowney to the Couri Insurance Agency could potentially constitute a trade secret. *See Enter. Leasing Co.*, 3 P.3d at 1069-70. However, conflicting inferences could be drawn regarding whether competitors could obtain economic value from use of the loss-ratio report, and neither party has presented evidence foreclosing reasonable inferences favoring the other side. Accordingly, summary judgment in favor of either party is inappropriate on this issue.l

**E. Breach of Fiduciary Duty**

"[I]n Arizona, an employee/agent owes his or her employer/principal a fiduciary duty." *McCallister Co. v. Kastella*, 825 P.2d 980, 982 (Ariz. App. 1992). Consistent with this fiduciary duty, an agent may not compete with his principal concerning the subject matter of the agency during the period of agency. *Id.*; *see also HTS, Inc.*, 954 F. Supp. 2d at 946. Before termination of the agency or employment, an agent or employee "may make arrangements to compete, but he 'cannot properly use confidential information peculiar to his employer's business and acquired therein'" and he cannot solicit customers in competition with the employer's business. *HTS, Inc.*, 954 F. Supp. at 946-47 (quoting *McCallister*, 825 P.2d at 982).

McEldowney argues that Plaintiffs' breach of fiduciary duty claim is preempted by the AUTSA. The AUTSA "displaces conflicting tort . . . laws . . . providing civil remedies for misappropriation of a trade secret." A.R.S. § 44-407(A). However, the AUTSA's displacement provision does not affect "[c]ontractual remedies, whether or not based on misappropriation of a trade secret," or "[o]ther civil remedies that are not based on misappropriation of a trade secret." A.R.S. § 44-407(B). In interpreting the AUTSA's displacement provision, the Arizona Supreme Court recently held that the "AUTSA does not displace common-law claims based on alleged misappropriation of confidential information that is not a trade secret." *Orca Commc'ns Unlimited, LLC v. Noder*, 337 P.3d 545, 546 (Ariz. 2014).

Here, Plaintiffs allege that McEldowney breached his fiduciary duty to Farm Bureau not only by misappropriating confidential information but also by soliciting Farm Bureau clients for his independent insurance agency while he was still employed as a Farm Bureau agent. This latter portion of Plaintiffs' breach of fiduciary duty claim is not preempted by the AUTSA because it is based on conduct other than misappropriation of trade secrets. The former portion of the claim is not preempted to the extent it alleges misappropriation of confidential information that does not constitute trade secrets.

Whether an agent's actions constitute a breach of fiduciary duty is a question of

fact to be decided by the trier of fact based on consideration of the totality of the circumstances. *HTS, Inc.*, 954 F. Supp. at 946. Summary judgment on the issue of whether McEldowney breached his fiduciary duty is inappropriate because jurors could draw conflicting reasonable inferences regarding (1) whether McEldowney's conduct before his departure from Farm Bureau constituted solicitation of Farm Bureau clients, and (2) whether McEldowney misappropriated confidential information not qualifying as a trade secret to compete with Farm Bureau.

### *III. Motion for Sanctions*

In October 2014, Defendants notified the 30(b)(6) deposition of Farm Bureau and listed certain categories of examination, including categories requesting the identities and total numbers of policyholders potentially affected by the non-solicitation provision at issue in this case. In a discovery dispute brief filed with the Court, Plaintiffs stated that they had agreed to produce witnesses to respond to all listed categories of examination "except that Plaintiffs do not agree to produce a witness with regard to identification of individual insureds requested in categories 3, 6 and 11." (Doc. 56 at 3.) The Court held that "[w]hile information concerning the number of Farm Bureau policyholders affected by the non-solicitation provisions is relevant to Defendants' argument that the non-solicitation provisions are overbroad, . . . the burden of responding to Defendants' requests for the actual *identities* of individual Farm Bureau policyholders outweighs the likely benefit of the proposed discovery." (Doc. 59 at 5.) After the Court's ruling on the parties' discovery dispute, Defendants served an amended notice of deposition that struck the requests for the identities of individual policyholders, in compliance with the Court's Order, but otherwise left the deposition categories unchanged. (*See* Doc. 60, Ex. A.)

Defendants allege that on November 20, 2014, Farm Bureau's designated 30(b)(6) representative, regional Vice President in Arizona, Stanley Bergstrom III, was unprepared to provide requested information in numerous categories. On December 5, 2014, the parties filed a Stipulation, which the Court granted, to extend the discovery deadline in order to conclude the deposition of Bergstrom. The follow-up deposition of

Bergstrom was held on January 6, 2015. Defendants allege that, at the follow-up deposition, Bergstrom was once again unprepared to provide requested information and deliberately refused to provide responsive information, including the number of Farm Bureau's policyholders in counties in which McEldowney sold insurance. Defendants argue that Bergstrom's refusal to provide requested information warrants sanctions pursuant to Fed. R. Civ. P. 37(d). Defendants request: (1) attorney's fees related to preparation of the Motion for Sanctions and completion of the 30(b)(6) depositions; (2) an order barring Plaintiffs from contesting the unreasonableness and unenforceability of the non-solicitation provisions; (3) an order precluding Plaintiffs from calling any witnesses not identified by Bergstrom to testify to being a Farm Bureau client solicited by McEldowney; and (4) a monetary fine of $5,000.

Plaintiffs argue that providing the specific number of accounts that Farm Bureau had in the counties where McEldowney worked would be unreasonably burdensome, and that Farm Bureau's counsel was unaware at the time of the discovery dispute briefing that the information was not kept by Farm Bureau in its normal course of business and could not be gathered without great expense. Plaintiffs also argue that Bergstrom's refusal to provide the number of insureds in the counties where McEldowney worked did not violate the Court's discovery dispute Order, because neither party addressed the issue of the number of insureds in their discovery dispute briefs.

In their discovery dispute briefing, Plaintiffs represented to the Court that they had agreed to produce witnesses to respond to *all* categories of examination, with the exception of the identities of individual insureds. Plaintiffs' objections to the deposition categories likewise focused only on the identities of the insureds rather than the total number of insureds. Since categories 3, 6, and 11 requested the *total number* as well as the *identities* of insureds, Plaintiffs' objections and representation to the Court clearly indicated that Plaintiffs had agreed to produce a witness to testify to the *number* of insureds, but not the *identities* of insureds. Plaintiffs never notified the Court (or Defendants, prior to the deposition) that they had changed their minds and would be

- 16 -

refusing to provide information which they had earlier represented they would provide. Further, the Court's Order directly held that information concerning the number of Farm Bureau policyholders affected by the non-solicitation provision is relevant to Defendants' argument that the non-solicitation provision is overbroad (Doc. 59 at 5). Plaintiffs' refusal to provide information concerning the number of insureds in counties where McEldowney worked was contrary to their prior representations to the Court and to the Court's Order.

Rule 37(d)(1)(A) of the Federal Rules of Civil Procedure provides that a court "may, on motion, order sanctions if: (i) a party or a party's officer, director, or managing agent . . . fails, after being served with proper notice, to appear for that person's deposition." Such a failure "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2). A number of courts have held that producing an unprepared 30(b)(6) witness is tantamount to a failure to appear. *See, e.g.*, *Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.*, 228 F.3d 275, 304 (3d Cir. 2000); *Resolution Trust Corp. v. Southern Union Co.*, 985 F.2d 196, 198 (5th Cir. 1993); *Great Am. Ins. Co. of N.Y. v. Vegas Const. Co.*, 251 F.R.D. 534, 542 (D. Nev. 2008); *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 152 (S.D.N.Y. 1997). Available sanctions may include those listed in Rule 37(b)(2)(A)(i)-(vii), in addition to requiring "the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(d)(3).

The Court finds that sanctions are appropriate, but the sanctions sought by Defendants are overly harsh. The Court will require Plaintiffs to reimburse Defendants for reasonable attorney's fees incurred in conducting the 30(b)(6) depositions of Farm Bureau, to the extent Plaintiffs have not already compensated Defendants for those expenses. The Court will also require Plaintiffs to reimburse Defendants for reasonable attorney's fees incurred in preparing and arguing Defendants' Motion for Sanctions.

Upon Defendants' request, the Court will instruct the jury that the lack of evidence of the specific number of customers covered by the non-solicitation provision at issue may support an adverse inference regarding the reasonableness of the scope of the provision. The Court declines to impose any of the other sanctions sought by Defendants.[3]

**IT IS ORDERED** that Defendants' Motion for Summary Judgment is **granted in part and denied in part**, and Plaintiffs' Motion for Summary Judgment is **granted in part and denied in part**, as follows:

1. Summary judgment is granted in Plaintiffs' favor on the issue of whether McEldowney's actions violated the literal terms of the non-solicitation provision of the relevant agent contract, but summary judgment is denied on the issue of whether the non-solicitation provision is enforceable.

2. Summary judgment is granted in Plaintiffs' favor on the issue of whether McEldowney breached the confidentiality provision of the relevant agent contract by disclosing an internal Farm Bureau loss-ratio report to the Couri Insurance Agency.

3. Summary judgment is denied on the issue of whether McEldowney breached the confidentiality provision by retaining and using customer information after his resignation from Farm Bureau.

4. Summary judgment is granted in Defendants' favor on the issue of whether McEldowney violated the AUTSA by using customer contact information and birthdays, but summary judgment is denied on the issue of whether McEldowney violated the AUTSA by using other customer information (such as claims histories and histories of insurance product purchases).

---

[3] Bergstrom was also unprepared to testify regarding the identity of Farm Bureau clients that Plaintiffs expect will testify to being solicited by McEldowney. Plaintiffs did not object to that category of examination and affirmatively represented to the Court that they would provide the requested information. (*See* Doc. 56 at 3; Doc. 56-1, Exs. A & B). Plaintiffs' refusal to provide such information was contrary to their prior representations. Nevertheless, the Court will not preclude Plaintiffs from calling witnesses to testify to being solicited by McEldowney, so long as the identities of those witnesses were disclosed during discovery and are listed in the parties' Joint Proposed Pretrial Order.

5. Summary judgment is denied on the issue of whether McEldowney violated the AUTSA by disclosing an internal Farm Bureau loss-ratio report to the Couri Insurance Agency.
6. Summary judgment is granted in Plaintiffs' favor on the issue of whether McEldowney owed a fiduciary duty to Farm Bureau, but summary judgment is denied on the issue of whether McEldowney breached that fiduciary duty.

**IT IS FURTHER ORDERED** that Defendants' Motion for Sanctions is **granted in part**, as follows:

1. Plaintiffs shall reimburse Defendants for reasonable attorney's fees incurred in conducting the 30(b)(6) depositions of Farm Bureau, to the extent Plaintiffs have not already reimbursed Defendants for those expenses.
2. Plaintiffs shall reimburse Defendants for reasonable attorney's fees incurred in preparing and arguing Defendants' Motion for Sanctions.
3. At trial, upon Defendants' request, the Court will instruct the jury that the lack of evidence of the specific number of customers covered by the non-solicitation provision at issue may support an adverse inference regarding the reasonableness of the scope of the provision.

Dated this 30th day of September, 2015.

_____
Honorable Rosemary Marquez
United States District Judge